IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

No. 22-6748

————————————

UNITED STATES OF AMERICA,

*Appellee*,

v.

NATHANIEL A. RICHARDSON, JR.,

*Appellant*.

————————————

Appeal from the United States District Court
for the Eastern District of Virginia
at Norfolk
*The Honorable Raymond A. Jackson, District Judge*

————————————

BRIEF OF THE UNITED STATES

————————————

Jessica D. Aber                    Richard D. Cooke
United States Attorney             Assistant United States Attorney
                                   919 East Main Street, Suite 1900
Daniel Honold                      Richmond, Virginia 23219
Assistant United States Attorney   (804) 819-5400

*Attorneys for the United States of America*

# Table of Contents

Page

Table of Authorities .................................................................. ii

Introduction ............................................................................1

Issue Presented .......................................................................1

Statement of the Case...............................................................2

    A.    Defendant led a vast criminal enterprise responsible for distributing over 26 kilograms of crack cocaine. ..................2

    B.    Defendant is convicted of multiple felony offenses following trial.........................................................................3

    C.    Defendant's convictions and sentence are upheld on appeal...............7

    D.    Defendant seeks a discretionary sentence reduction under the Fair Sentencing Act and First Step Act................................8

Summary of Argument ...........................................................16

Argument...............................................................................17

    Given that the statutory maximum for defendant's conviction for a continuing criminal enterprise was unaffected by the Fair Sentencing Act and that his guidelines remain life imprisonment, the district court did not abuse its discretion in declining to reduce that sentence ..................17

Conclusion ...........................................................................26

Statement Regarding Oral Argument ......................................27

Certificate of Compliance .......................................................27

i

# Table of Authorities

Page

**Cases**

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)........................................................8

*Batson v. Kentucky*, 476 U.S. 79 (1986)............................................................7

*Concepcion v. United States*, 142 S. Ct. 2389 (2022) ....................................*passim*

*Gall v. United States*, 552 U.S. 38 (2007) ...............................................23

*Jones v. United States*, 431 F. Supp. 3d 740 (E.D. Va. 2020)...............................18

*Mistretta v. United States*, 488 U.S. 361 (1989)........................................20

*Pepper v. United States*, 562 U.S. 476 (2011)........................................22

*Richardson v. United States*, 526 U.S. 1155 (1999)..................................7

*Terry v. United States*, 141 S. Ct. 1858 (2021)........................................9

*United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008)...............................24

*United States v. Bartlett*, 567 F.3d 901 (7th Cir. 2009)..........................23

*United States v. Chandia*, 675 F.3d 329 (4th Cir. 2012) .......................24

*United States v. Collington*, 995 F.3d 347 (4th Cir. 2021)................. 12, 14, 20, 22

*United States v. Fletcher*, 997 F.3d 95 (2d Cir. 2021)..........................21

*United States v. Franklin*, 785 F.3d 1365 (10th Cir. 2015)....................23

*United States v. Gravatt*, 953 F.3d 258 (4th Cir. 2020).........................19

*United States v. Hadden*, 475 F.3d 652, 751– (4th Cir. 2007) ...............19

*United States v. Jeffery*, 631 F.3d 669 (4th Cir. 2011) .........................25

*United States v. LaBonte*, 520 U.S. 751 (1997).....................................25

*United States v. Lancaster*, 991 F.3d 171 (4th Cir. 2021) .....................13

*United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007) .........................25

*United States v. Payne*, —F.4th—, 2022 WL 17333795 (4th Cir. Nov. 30, 2022)........................................................21

*United States v. Pepper*, 562 U.S. 476 (2011).....................................25

*United States v. Richardson*, 100 F. App'x 909 (4th Cir. 2004) (per curiam)........................................................8

*United States v. Richardson*, 1998 WL 546096 (4th Cir. 1998) (unpublished) ................................................................................2

*United States v. Richardson*, 233 F.3d 223, 230 (4th Cir. 2000) ............................8

*United States v. Richardson*, 585 F. App'x 245 (4th Cir. 2014) (per curiam) ..................................................................................8

*United States v. Rivera-Santana*, 668 F.3d 95 (4th Cir. 2012) ................................24

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) ................................ 12, 22

*United States v. Thomas*, 32 F.4th 420 (4th Cir. 2022) (per curiam) ......................13

*Wash. Gas Light Co. v. Va. Elec. & Power Co.*, 438 F.2d 248 (4th Cir. 1971) ................................................................................12

*United States v. Winters*, 416 F.3d 856 (8th Cir. 2005).........................................25

*Wright v. United States*, 425 F. Supp. 3d 588 (E.D. Va. 2019)................................19

**Statutes**

18 U.S.C. § 1956(a)(1)(B) ................................................................................3

18 U.S.C. § 3553(a) .................................................................................. 11, 23

18 U.S.C. § 3582(c)(2)................................................................................8

18 U.S.C. §§ 924(c) ................................................................................3

21 U.S.C. § 841(a)(1)................................................................................3

21 U.S.C. § 846 ................................................................................3

21 U.S.C. § 848 ................................................................................3

## Introduction

Defendant led a multi-year drug-trafficking enterprise that distributed over 26 kilograms of crack cocaine, had a lengthy criminal history, and engaged in violence, including killing the mother of one of his children. Defendant's leading conviction, a continuing criminal enterprise (CCE) offense, was unaffected by the Fair Sentencing Act. And under the current guidelines, defendant continues to have an advisory sentencing range of life imprisonment.

On remand from this Court, the district court left in place defendant's life sentence for the CCE conviction but reduced his sentence on one concurrent count from life to 30 years for count three, which charged that on a single day, May 1, 1995, he possessed with intent to distribute 50 grams or more of crack cocaine. That offense arose from the execution of a search warrant in which police found that defendant had 642.5 grams of crack, a quantity that exceeds the new threshold of 280 grams in the Fair Sentencing Act. Across numerous other cases, the district court has expressly stated its view that, when a defendant has a covered offense under § 404, the court may, in its discretion, reduce the sentence on other counts.

## Issue Presented

Did the district court abuse its discretion in denying defendant a sentence reduction for his continuing criminal enterprise conviction?

1

**Statement of the Case**

A. **Defendant led a vast criminal enterprise responsible for distributing over 26 kilograms of crack cocaine.**

Leading up to the summer of 1992, defendant "ascend[ed] from street hustler to major drug distributor." *United States v. Richardson*, 1998 WL 546096, at *3 (4th Cir. 1998) (unpublished), *cert. granted, judgment vacated on other grounds*, 526 U.S. 1155 (1999) (*Richardson I*). Then, for several years in the early and mid-1990's, defendant "organized and operated a continuing drug trafficking operation in the Southside Gardens area of Portsmouth, Virginia." *Id.* at *1. Defendant "was the boss of" this "well-planned and intricate drug trafficking enterprise," with "several underlings, a major supplier, and a network of distribution" that utilized "various apartments throughout the Portsmouth area." *Id.* at *4.

Defendant "enforced his authority through violence." *Id*. at *4. Specifically, defendant "used weapons to intimidate and enforce order during the period of the continuing drug enterprise." *Id.* For example, defendant "shot at [one of his distributors] when she failed to pay for cocaine he had previously fronted her." *Id.* at *5 (citation omitted). Defendant also possessed firearms, sometimes "commingled with cash" on several occasions. *Id.* Additionally, while "actively engaged in the sale and distribution of narcotics," defendant "lead law enforcement officers on a high speed pursuit through the City of Portsmouth." *Id.* at *6. In short,

2

the operation involved hundreds of individual drug transactions, as well as multiple instances of violence and firearm possession.

### B. Defendant is convicted of multiple felony offenses following trial.

In July 1996, a grand jury returned a 16-count indictment against multiple defendants. JA20. Defendant was charged with the following:

Count 1      Conspiracy to distribute crack cocaine and heroin, in violation of 21 U.S.C. § 846.

Count 2      Continuing criminal enterprise, in violation of 21 U.S.C. § 848.

Count 3      Distribution and possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1).

Count 10     Using a firearm in furtherance of a drug-trafficking conspiracy, in violation of 18 U.S.C. §§ 924(c), 2.

Count 15     Money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B).

Count 16     Money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B).

JA20–41.

Following an eight-day jury trial before the Honorable Raymond A. Jackson, defendant was convicted of all counts except for count 10, of which he was acquitted. JA327.

The probation office prepared a presentence report (PSR). JA325-376. The PSR originally attributed 26.13 kilograms of cocaine base to defendant and added

3

two points for possessing a dangerous weapon, yielding a base offense level of 40 for counts 1 and 3. JA367. With a four-point enhancement for his leadership role in the conspiracy, and two two-point enhancements for obstructing justice, defendant's adjusted offense level was 48. *Id.* For count 2, his base offense level was 44—the offense level from counts 1 and 3, plus four points, *see* U.S.S.G. § 2D.15(a)(1) (1995). JA368. With the same four points for obstructing justice, his adjusted offense level was also 48. *Id.*[1]  All of the counts grouped, yielding a combined adjusted offense level of 48. JA370.

The PSR recounted defendant's approximately 33 prior arrests, resulting in approximately 29 convictions over 14 separate occasions. JA371–72. His prior arrests included murder, manslaughter, malicious wounding, use of a firearm, hit and run, and multiple assaults and batteries. JA348–51.

One such arrest in February 1994 was for the assault and battery of Telisha Johnson, the mother of one of defendant's two daughters. The battery involved allegations of defendant squeezing Ms. Johnson's neck with his legs and knocking an eleven-year-old to the ground for having attempted to intervene. JA349–50. Ms. Johnson advised authorities in June 1994 that she no longer wanted the case prosecuted. JA350. Ms. Johnson's mother reported that defendant had a history of

---

[1] Defendant's adjusted offense level for the money-laundering counts, counts 15 and 16, was 29; that offense level did not affect his guideline range. JA369.

assault against her daughter, including times when he hit her, ran her vehicle off the road, and put a gun to her head. JA353. Nine months after Ms. Johnson declined to participate in the prosecution, defendant was arrested for having killed Ms. Johnson. *Id.* The death was described as an accidental shooting, and defendant was convicted of involuntary manslaughter. JA346.

Defendant also had three convictions for assault and battery. JA343–35, 347. In one such instance, in January 1996, the defendant entered Maryview Hospital with a subject in his arms that had a gunshot wound. Defendant stated, "The bitch was cutting my tires so I started shooting." JA347. A Portsmouth Police Officer who was at the hospital, ordered defendant to lay the victim down. Defendant swung his fist at the officer's face and arm and tried to elude him. Defendant then broke the glass to a fire prevention case and, after he was subdued, told the officer, "wait 'till I f\*\*king find your ass on the street, you're gonna die bitch … f\*\*k you." *Id.*

Defendant had nine criminal-history points for his prior convictions and two points for committing the current offenses while serving a sentence in another case, resulting in a criminal-history category of V. JA372–73. Defendant's then-mandatory guidelines range was a life imprisonment. JA374.

Defendant raised numerous objections to the factual findings and enhancements in the PSR. JA360–63 (raising approximately 28 objections). On

5

January 24, 1997, the district court conducted a lengthy sentencing hearing, addressing defendant's objections one by one. *See generally* JA42–151. After hearing testimony from the case agent, JA117–35, the court overruled nearly every one of defendant's objections. Notably, the court sustained defendant's objection to one of the two two-point obstruction enhancements, JA138–39, bringing the adjusted offense levels for counts 1, 2 and 3 down to 46 from 48.[2]  The court also sustained in part an objection to paragraph 20 of the PSR, amending it to read that defendant would supply approximately one kilogram of crack cocaine weekly to one of his confederates, not "approximately one to two kilograms weekly." JA62, 330–31. The court also sustained an objection to paragraph 33 after the government acknowledged that approximately one-eighth, or 0.125, of a kilogram of crack cocaine was double counted with paragraph 31. JA69–70; *see* JA333. Ultimately, the weight of crack cocaine attributed to defendant was 26.01 kilograms, down from 26.13. JA367. This change did not affect his offense level.

After vacating count 1 as a lesser-included offense of count 2, the court sentenced defendant to an aggregate life sentence: life imprisonment on counts 2 and 3, and 240 months of imprisonment on counts 15 and 16, to be served concurrently. JA161, 163–66.

---

[2] This change did not affect the ultimate guidelines range of life imprisonment.

**C.    Defendant's convictions and sentence are upheld on appeal.**

Defendant's direct appeal, consolidated with those of two co-defendants, raised a number of issues, all of which were rejected by this Court. *See Richardson I*, 1998 WL 546096. These included challenges to (1) the exclusion of prospective jurors under *Batson v. Kentucky*, 476 U.S. 79 (1986); (2) the admission of evidence of illicit conduct predating the date range in the indictment; (3) the sufficiency of the evidence for his conviction for a continuing criminal enterprise (CCE); (4) the denial of a defense instruction regarding the CCE charge; (5) the two-point enhancement for using a dangerous weapon and remaining two-point enhancement for obstruction; and (6) a CCE jury unanimity instruction as to the underlying violations. *See id.*; *id.* n.2. Notably, while his co-defendant Jermaine Golden "challenge[d] the attribution to him of 2.01 kilograms of cocaine as recommended in the presentence report," *id.*, defendant did not seek review of the district court's many denials of his challenges to the drug quantities attributed to him.

In June 1999, the United States Supreme Court vacated the decision in *Richardson I* and remanded for further consideration in light of *(Eddie) Richardson*, 526 U.S. 813 (CCE conviction requires jury unanimity as to individual underlying violations). *Richardson v. United States*, 526 U.S. 1155 (1999). In November 2000, this Court once again affirmed. *United States v.*

7

*Richardson*, 233 F.3d 223, 230 (4th Cir. 2000) (*Richardson II*). This Court held that defendant could not establish plain error from the lack of a unanimity instruction; there was "affirmative evidence of hundreds of substantive felony violations of the federal drug laws in which Richardson either possessed, sold, bought, or prepared crack cocaine or other illegal drugs." *Id.* at 230; *see also id.* at 230 n.7 (listing dozens of examples of defendant's drug transactions established at trial). Because "[t]he proof against [defendant] was simply overwhelming," he could not establish prejudice from the instructional error. *Id.*[3]

This Court affirmed the denial of defendant's various motions for post-conviction relief.  *United States v. Richardson*, 100 F. App'x 909 (4th Cir. 2004) (per curiam); *United States v. Richardson*, 585 F. App'x 245 (4th Cir. 2014) (per curiam). *See also* JA231–32 (recounting multiple unsuccessful trial-court motions).

### D.    Defendant seeks a discretionary sentence reduction under the Fair Sentencing Act and First Step Act.

In April 2019, defendant moved for a sentence reduction. JA172–85.[4] He argued that he was eligible for a sentence reduction because the jury was required to find that he was responsible for only 50 grams of crack cocaine to convict on

---

[3] This Court also rejected challenges under the recently decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Richardson II*, 233 F.3d at 231–32.

[4] Defendant also moved for a sentence reduction under 18 U.S.C. § 3582(c)(2), *see* JA232–34, the denial of which defendant does not challenge on appeal.

Count 3. JA180–81. Defendant claimed that "the drug quantity ultimately attributed to him by the probation officer was contested," and that "the Court never resolved or specifically resolved the objection by making a specific finding on the total quantity of drugs attributed to him." JA182.  He briefly argued that he deserved a reduction because he had "for the most part stayed out of trouble and avoided serious disciplinary infractions," and "worked regularly and participated in and completed a number of educational, vocational and rehabilitative classes and programs." JA183–84.

In April 2019, the government opposed defendant's motion for a sentence reduction. JA194–212. The government argued that defendant was not eligible for relief. Relying on its then-existing position that because count 3 involved well in excess of 280 grams, the government argued that the Fair Sentencing Act did not alter the statutory penalty range, and therefore count 3 was not a covered offense. JA198–99. The Supreme Court's opinion in *Terry v. United States*, 141 S. Ct. 1858 (2021), resolves that count 3 is a covered offense.

The government also argued in the alternative that the court should deny relief in the exercise of its discretion. JA200–01. Pointing to defendant's (1) extensive prior criminal history, (2) weak education and work records, and (3) leadership role in this sprawling and violent drug conspiracy, the government argued that defendant did not merit a sentence reduction even if he were eligible

9

for relief. In short, defendant was "not the type of defendant who should receive reconsideration of his sentence." JA201.

In July 2019, the district court denied the motion. JA230. The district court agreed that defendant "initially qualifie[d] for relief under the FIRST STEP Act," because his conviction for distributing crack cocaine in count 3 was a covered offense. JA234. However, the court chose to exercise its "broad discretion" conferred by the First Step Act to deny relief. JA235. The court found that "[a]s the organizer of the drug conspiracy, [defendant's] offense involved not just drugs, but a long series of violent acts, including assaulting people, shooting people, threatening them, and offering money to kill a witness." JA235 (citations omitted). Additionally and "[m]ost notably, [defendant] had a criminal history category of V, the second highest in the guidelines," because he had "been convicted of three separate assault and battery charges," and "involuntary manslaughter in the accidental shooting of the mother of one of his children." *Id.* (citations omitted). "And yet," the court noted, "in his *pro se* filings, [defendant] state[d] that he 'does not have a significant criminal history,'" which the court found troubling. *Id.* The court thus denied relief in its discretion. *Id.*

Defendant moved for reconsideration.  JA237–49. He claimed that the conspiracy he led did not involve "many or significant violent acts, assaults or people being shot." JA244. Defendant acknowledged that his "criminal history

certainly exists," but argued that the court was wrong to rely on it in denying relief because defendant's original sentence was driven by the "amount of crack cocaine and the resulting guideline range" JA241. Defendant objected to the court's reference to defendant "offering money to kill a witness" because the court had sustained an objection to an obstruction enhancement predicated on that allegation. JA244. He reiterated that he "was involved in a fight and had possession of intoxicants 22 years ago" but had avoided serious disciplinary infractions since then, and provided additional exhibits regarding education and programming while incarcerated. JA243, 245–47. Defense counsel, "fall[ing] on his sword," acknowledged that the original motion had "failed to sufficiently highlight and address" defendant's post-offense rehabilitation. JA245 n.2.

On November 12, 2019, the district court denied the motion for reconsideration. JA287–92. The court reiterated its holding that defendant was eligible for consideration for relief, but found that "the [18 U.S.C.] § 3553(a) factors continue to weigh against" a sentence reduction. JA291. The court acknowledged that defendant "was originally sentenced under a since-rejected sentencing scheme that was applied in a draconian manner to other crack cocaine defendants," and noted defendant's rehabilitative efforts while in prison. *Id.* But these "d[id] not outweigh [defendant's] offense conduct and his criminal history category," especially where defendant "was the singular leader of a massive and

11

pervasive continuing criminal enterprise." *Id.*

On November 26, 2019, defendant noted an appeal to this Court. JA293. On appeal, defendant contended that the district abused its discretion in evaluating sentencing disparities under 18 U.S.C. § 3553(a)(6). Defendant did not argue that leaving in place his sentence on count 3 exceeded the applicable statutory maximum, and defendant had not raised such a claim in the district court.

On July 8, 2021, this Court reversed the district court's ruling and concluded that "erred by not resentencing [defendant], on Count 3, to—at most—40 years' imprisonment," JA297–98 (citing *United States v. Collington*, 995 F.3d 347, 357 (4th Cir. 2021)). The Court acknowledged that defendant "did not raise this argument on appeal." JA298 n.1. Nor had the issue been raised in the district court. This Court also did not request supplemental briefing or otherwise provide advance notice of the issue it was raising. In raising the issue *sua sponte*, the court invoked a case that did not bless deciding an issue without briefing. *Id.* (citing *Wash. Gas Light Co. v. Va. Elec. & Power Co.*, 438 F.2d 248, 250–51 (4th Cir. 1971)). *Wash. Gas Light Co.* also predated *United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020). *Sineneng-Smith* rejected a ruling by a court of appeals that raised an issue on a defendant's behalf—even though the court of appeals had decided that issue after affording the parties briefing.

Recently, this Court heard oral argument on whether *Collington*'s rule about

12

the applicable statutory maximum was abrogated by *Concepcion v. United States*, 142 S. Ct. 2389 (2022). *See United States v. Reed*, No. 19-7368 (oral argument held Oct. 28, 2022). In the government's view, *Collington* is no longer valid precedent. Moreover, *Collington* itself did not squarely answer how the applicable drug quantity for a given count would be determined. Although count 3 charged that defendant and Joseph Ricky Dodd possessed with intent to distribute 50 grams or more of crack cocaine, JA32, that count arose from the execution of a search warrant in which police recovered 642.5 grams of crack, JA336, a quantity well in excess of the new threshold of 280 grams in the Fair Sentencing Act.

On June 13, 2022, without receiving additional briefing, the district court issued a post-remand order granting in part and denying in part defendant's First Step Act motion. JA302–22. The court conducted a "complete review on the merits," JA307 (citing *United States v. Lancaster*, 991 F.3d 171, 174 (4th Cir. 2021)), before reducing defendant's sentence for distribution of crack cocaine in count 3 to 360 months of incarceration, JA322.

In granting a reduction, the district court acknowledged that defendant's advisory guideline range remained unchanged and continues to be life imprisonment and that his CCE conviction is not a covered offense under *United States v. Thomas*, 32 F.4th 420 (4th Cir. 2022) (per curiam), and is unaffected by the Fair Sentencing Act. The court left unchanged the sentence for the CCE

13

conviction.

In conducting its review, the district court noted that *Collington* "mandated several steps district courts must take to ensure that the evaluation of the merits is procedurally and substantively reasonable." JA307–08 (citation and internal quotation marks omitted). These included (1) determining "the new statutory range set by any amended statutory minimums and maximums"; (2) "recalculat[ing] the Sentencing Guidelines range by correcting original Guidelines errors and applying intervening case law made retroactive to the original sentence"; and (3) "reconsider[ing] the 18 U.S.C. § 3553(a) factors," including accounting for post-sentencing conduct. JA308 (citations omitted).

The court addressed and explicitly rejected defendant's arguments regarding the amount of crack cocaine attributable to him. JA310–11 & n.4 (exhaustively reviewing the PSR and sentencing transcript, finding that defendant was responsible for "26.00237 kilograms of cocaine base, precisely, not including the quantity of heroin converted for sentencing," and rejecting defendant's argument "that 'the record does not establish that [he] was explicitly held responsible for 26 kilograms of cocaine base, or any other quantity other than more than 1.5 kilograms of cocaine base'" (citation omitted, brackets in original)); *see also* JA317 (rejecting arguments that defendant should be responsible for lower weights because the government was not required to prove the 26 kilograms to the jury and

did not need to establish that weight to reach the maximum offense level under the 1995 guidelines). The court accordingly determined that defendant's offense level for count 3 (distribution of crack cocaine)—and by extension count 2 (CCE)—remained the same, level 46. JA311. Defendant's now-advisory Guidelines range thus remained life imprisonment, JA311–12, restricted under the terms of this Court's remand to 480 months of incarceration on Count 3, JA318.

The court then went back through the 18 U.S.C. § 3553(a) factors, this time finding that they warranted a sentence reduction as to Count 3, the count that involved a single instance on May 1, 1995, of possessing crack cocaine with intent to distribute. JA318–21. On one hand, defendant's broader offense conduct, which included large amounts of controlled substances and violence with firearms, remained "unquestionably serious." JA318–19. Likewise, defendant's criminal history was "extensive." JA319. Defendant also incurred two significant infractions while incarcerated. JA320.

On the other hand, defendant joined the conspiracy when he was approximately 20 years old and had spent more than half of his life incarcerated for these offenses. JA320. Defendant earned his GED while incarcerated and had completed additional programming. JA320–21. The court also considered that defendant was the last remaining to-conspirator to be incarcerated. JA321. But the court recognized that all of the other co-defendants were responsible for

15

significantly lower drug weights and, unlike with defendant, all of their guidelines ranges were lowered by Amendment 782. *Id.* Thus, considering defendant's "amended statutory sentencing range [as to count 3], youth at the time of the covered offense, age, support system, and the need to avoid sentencing disparities," the court found a partial sentence reduction to 360 months on count 3 appropriate. JA321–22. The court left unchanged all other aspects of defendant's sentence. JA322.

On June 26, 2022, defendant noted the current appeal. JA323. The following day, June 27, 2022, the Supreme Court issued its decision in *Concepcion v. United States*, 142 S. Ct. 2389 (2022). *See id.* at 2402 & n.6 ("the First Step Act specifically requires district courts to apply the legal changes in the Fair Sentencing Act when calculating the Guidelines if they chose to modify a sentence," but a court "cannot … recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act").

## Summary of Argument

The district court acted well within its discretion in declining to reduce defendant's life sentence for his conviction for a continuing criminal enterprise. The Fair Sentencing Act did not modify the statutory penalty range for that offense, and defendant's guideline remains today life imprisonment. His offense

16

conduct was serious—involving the distribution of over 26 kilograms of crack—and was advanced through violence. Defendant also has an extensive and violent criminal history.

In declining to reduce defendant's sentence on count 2, the district court acted in keeping with its earlier discretionary denial of relief. Any claim that the district court believed that it lacked discretion to reduce the sentence on count 2 conflicts with multiple rulings from the district court in other cases and the court's own prior ruling in this case. This Court's decision to remand this case was also in error, and defendant's life sentence on count 2 should be simply affirmed.

## Argument

**Given that the statutory maximum for defendant's conviction for a continuing criminal enterprise was unaffected by the Fair Sentencing Act and that his guidelines remain life imprisonment, the district court did not abuse its discretion in declining to reduce that sentence.**

Defendant contends that the district court abused its discretion in declining to reduce his sentence for his CCE conviction in count 2. Defendant does not dispute that the Fair Sentencing Act had no effect on the statutory penalties for his CCE conviction, and he does not dispute that his advisory guideline range remains to this day life imprisonment. Rather, he seeks to leverage the district court's decision to reduce his sentence on count 3 to claim that the district court erred in declining to reduce his sentence on count 2. He places great weight on a phrase in the district court's opinion after it noted that the CCE conviction is not a covered

17

offense in which the district court stated that count 2 "is ineligible for review on the merits." JA313–14. But the district court did not abuse its discretion.

*First*, defendant's claim that the district court believed it was barred from reducing his sentence on count 2 cannot be squared with the district court's original ruling on his § 404 motion, denying relief in the court's discretion on all counts. Defendant did not claim in his last appeal that the district court believed that it faced some legal bar to reducing his sentence on count 2, nor is there any basis to make such a claim about the district court's original denial—or its denial on reconsideration before the first appeal. As the district court explained, "Quite simply, legal eligibility for a sentence reduction does not create entitlement to a sentence reduction, particularly when the § 3553(a) factors continue to weigh against the Court's grant of a reduction." JA291.

*Second*, in other cases, the district court has made plain its view that it believes that, when a district court has one covered offense, the court may revisit the sentence on other counts that are not covered offenses. *See, e.g., Jones v. United States*, 431 F. Supp. 3d 740, 752 (E.D. Va. 2020) (Jackson, J.) (Under § 404, "the Court is imposing a new sentence on Petitioner. Therefore, it is as if Petitioner has not been sentenced. Because 'a sentence is not merely the sum of its parts,' and district courts impose 'sentence[s] by considering all of the relevant factors as a whole,' when a new sentence is imposed, a whole sentence on all

18

counts should be imposed.") (quoting *United States v. Hadden*, 475 F.3d 652, 751–52 (4th Cir. 2007)); *see also Wright v. United States*, 425 F. Supp. 3d 588, 598 (E.D. Va. 2019) (same). Indeed, in *United States v. Reed*, No. 19-7368, pending before this Court, the district court adopted the view that is consistent with its rulings in *Jones* and *Wright* that a district court ruling on a § 404 motion has the authority to revisit statutory mandatory penalties for 18 U.S.C. § 924(c). *See United States v. Reed*, No. 4:96-cr-22-RAJ, Doc. 460 at 6–7.

The district court's decision to decline to reduce the sentence on count 2 should be viewed against district court's consistently expressed views about its authority to reduce sentences for a count that is not a covered offense when a defendant has other convictions that are covered offenses. Indeed, the district court has an overly expansive view of its power to alter sentences on other counts.

Contrary to the district court's view in *Reed*, a district court may not revisit statutory mandatory minimums that are unaffected by the Fair Sentencing Act. *See, e.g., United States v. Gravatt*, 953 F.3d 258, 264 n.5 (4th Cir. 2020) ("Even if a defendant's sentence involves a covered offense, the district court's review of a defendant's First Step Act motion cannot avoid those statutory requirements" that are unaffected by the Fai Sentencing Act).

Moreover, although *Concepcion* filled in background principles of sentencing law where § 404 did not expressly address a topic, the Supreme Court

required a district court to adhere to statutory commands that govern a sentencing and are unaffected by § 404's text. "[T]he scope of judicial discretion with respect to a sentence is subject to congressional control." *Concepcion*, 142 S. Ct. at 2400 (quoting *Mistretta v. United States*, 488 U.S. 361, 364 (1989)). Thus, for example, 18 U.S.C. § 3661, governs a § 404 motion, placing "[n]o limitation" on "the information concerning the background, character, and conduct of a person convicted of an offense" that a court may consider when deciding what sentence to impose. *Id*. Nor did *Concepcion* adopt the view that a § 404 motion is a *de novo* resentencing.

Defendant's CCE conviction on count 2 had a statutory penalty range of 20 years to life, so the life sentence on count 2 was not compelled by statute. But the district court's ruling before defendant's first § 404 appeal plainly accorded with that understanding, and the district court simply denied relief in its discretion. The district court's ruling on remand should be viewed as not disturbing its original, correct discretionary denial of relief on count 2.

*Third*, when this Court reversed and remanded, that reversal was in error, and the United States never received an opportunity to object. As this Court's ruling in *Reed* should show, the Supreme Court's intervening decision in *Concepcion* after the remand in this case abrogates *Collington*'s rule about the applicable statutory maximum that this Court applied in defendant's first § 404

appeal. Other precedent reinforces that result.

In *United States v. Payne*, —F.4th—, 2022 WL 17333795 (4th Cir. Nov. 30, 2022), this Court held that the plain language of § 404 of the First Step Act permits sentence reductions but does not alter criminal liability. Section 404 "operates as a 'sentence reduction statute' and 'does not undermine the nature or validity of convictions even for 'covered offenses.''" *Id*. at *3 (quoting *United States v. Fletcher*, 997 F.3d 95, 98 n.3 (2d Cir. 2021)). Thus, § 404 "does not 'authorize a judge … to vacate a conviction for a more serious offense and 'enter an amended judgment for' a less serious offense." *Id*. That means that under § 404, a 50-gram crack conspiracy remains an offense punishable under 21 U.S.C. § 841(b)(1)(A). The offense's classification is unchanged, and § 404 simply authorizes a discretionary sentence reduction. Again, § 404 "did not 'expressly' extinguish liability for pre-Fair Sentencing Act offenses; it did 'not undermine the nature or validity of convictions." *Payne*, 2022 WL 17333795 at *3 (quoting *Fletcher*, 997 F.3d at 98 n.3).

*Payne*'s ruling that § 404 does not alter criminal liability works in tandem with § 404(c), providing that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." Because criminal liability for a 50-gram crack conspiracy is unchanged, a district court need not reduce the sentence for such an offense to fall within the penalty range in § 841(b)(1)(B).

In *Concepcion*, the Supreme Court in construing § 404 applied background principles of sentencing law only where the text of § 404 did not answer the question. But as *Payne* demonstrates, the text of § 404 does answer two questions—criminal liability is unaltered, and "nothing" in § 404 requires a court to reduce "any sentence." *Payne*'s correct interpretation of the text of § 404 shows that *Concepcion* did abrogate that aspect of *Collington* that requires sentences for covered offenses to be reduced to fall within the lower penalty range.

The law-of-the-case doctrine "does not apply if the court is 'convinced that [its prior decision] is clearly erroneous and would work a manifest injustice.'" *Pepper v. United States*, 562 U.S. 476, 506–07 (2011) (citation omitted). Similarly, the remedy when a court violates the principle of party presentation is simply to delete the issue that the court improperly decided. *Sineneng-Smith*, 140 S. Ct. at 1582.

Because there was no valid basis to remand defendant's case in the first appeal, and the remand left in place the life sentence on count 2, there is no basis to disturb the district court's now repeated denial of a reduction in the life sentence on count 2. Aside from this Court's remand on the statutory maximum for count 3, this Court's opinion in the last appeal identified no error in the sentence on count 2, and defendant should obtain no greater rights when the sentence on count 2 was reaffirmed by the district court on remand. Defendant has not renewed his

challenge in his earlier appeal about the district court's consideration of unwarranted disparities.

Nor was that argument meritorious. First, as courts have explained, the appropriate standard for evaluating disparities is a nationwide standard, and the most meaningful, systematic nationwide standard is provided by the sentencing guidelines. "A sentence within a Guideline range 'necessarily' complies with [18 U.S.C.] § 3553(a)(6)." *United States v. Franklin*, 785 F.3d 1365, 1371 (10th Cir. 2015) (quoting *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009)). Here, the district court specifically took into account the guidelines and declined to reduce defendant's sentence.

When the Supreme Court vested very broad discretion in each individual sentencing judge, that grant of authority inevitably does yield highly individualized sentencing decisions. The Supreme Court itself has made this clear.

In *Gall v. United States*, 552 U.S. 38 (2007), the United States challenged a district court's downward variance from the guidelines and invoke § 3553(a)(6). The Supreme Court rejected the appeal to § 3553(a)(6). "As with the seriousness of the offense conduct, avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges. Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid

23

unwarranted disparities." 552 U.S. at 54. Although here, unlike in *Gall*, the district court chose to leave defendant's sentence within the guideline range, the district court did not abuse its discretion in considering unwarranted disparities.

Similarly, this Court has rejected challenges to unwarranted disparities like the one defendant raises here. "[T]here are always variations in sentencing, which is a quintessentially fact-specific and multifaceted exercise." *United States v. Friend*, 2 F.4th 369, 382 (4th Cir. 2021). For example, this Court considered a claim where a defendant claimed that "he was the least culpable among his coconspirators yet received a greater sentence" and pointed to cases where, he claimed "the defendant received lesser sentences even though their conduct was more egregious." *United States v. Chandia*, 675 F.3d 329, 341–42 (4th Cir. 2012). This Court rejected the argument and held that "comparing the sentences of other defendants with dissimilar offenses, circumstances, and criminal histories is unavailing." *Id*. at 342 (citing *United States v. Abu Ali*, 528 F.3d 210, 267 (4th Cir. 2008)). "Courts have repeatedly made clear that comparisons of sentences may be treacherous because each sentencing proceeding is inescapably individualized or because some defendants possess, as here, a demonstrated propensity for criminal activity that is almost unique in its dimensions." *United States v. Rivera-Santana*, 668 F.3d 95, 105–06 (4th Cir. 2012). And even if a defendant's "sentence is more severe than average, that fact does not mean that it was unwarranted. Put

succinctly, we are unwilling to isolate a possible 'sentencing disparity to the exclusion of all the other § 3553(a) factors.'" *Id*. (quoting *United States v. Winters*, 416 F.3d 856, 861 (8th Cir. 2005)).

More generally, as this Court has explained, "[d]istrict courts have extremely broad discretion when determining the weight to be given each of the § 3553(a) factors." *United States v. Jeffery*, 631 F.3d 669, 679 (4th Cir. 2011). And the Supreme Court has "held it 'quite reasonabl[e]' for the sentencing court to have 'attached great weigh' to a single factor." *United States v. Pauley*, 511 F.3d 468, 476 (4th Cir. 2007) (citing *Gall*, 552 U.S. at 59).

And defendant cannot compare himself to defendants who chose to plead guilty or who cooperate with the government. *See United States v. Pepper*, 562 U.S. 476, 503 (2011) ("But *amicus* points to no evidence, nor are we aware of any, suggesting that Congress enacted § 3553(a)(6) out of a concern with disparities resulting from the normal trial and sentencing process") (citing *United States v. LaBonte*, 520 U.S. 751, 761–62 (1997) (disparity arising from prosecutorial discretion not unwarranted)).

## Conclusion

For the reasons stated above, this Court should affirm the judgment.

Respectfully submitted,

Jessica D. Aber
United States Attorney

/s/
_____
Richard D. Cooke
Assistant United States Attorney

## Statement Regarding Oral Argument

The United States respectfully suggests that oral argument is not necessary in this case.  The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.


## Certificate of Compliance

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 13,000 words (and is specifically 5,854 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.


_____/s/_____
Richard D. Cooke
Assistant United States Attorney
